UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL S. KITT,

                Plaintiff,

v.                                         **DECISION AND ORDER**
                                                      10-CV-839S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

      1.      Plaintiff, Michael S. Kitt, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Kitt alleges that he has been disabled due to low-back, cervical spine, and carpal tunnel problems since May of 2007. Kitt contends that his impairments render him unable to work. He therefore asserts that he is entitled to disability insurance benefits and supplemental security income (collectively "benefits") under the Act.

      2.      Kitt filed an application for benefits under Titles II and XVI of the Act on August 27, 2007, alleging disability from a work-related accident since May 9, 2007.[1] The Commissioner of Social Security ("Commissioner") denied Kitt's initial application, and as result he requested an administrative hearing. He received that hearing on November 20, 2008 before ALJ Marilyn D. Zahm; Kitt appeared with counsel and testified. The ALJ considered the case *de novo*, and on December 4, 2008, she issued a decision denying Kitt's application for benefits. Kitt filed a request for review with the Appeals Council, but the Council denied that request on August 27, 2010. Kitt then filed the current civil action

---

[1] He initially alleged disability starting from November 21, 2004, but later amended that date to May 9, 2007.

1

on October 22, 2010, challenging Defendant's final decision.[2]

3.   On May 17, 2011, the Commissioner filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Kitt followed suit by filing his own motion for judgment on the pleadings three months later on August 4, 2011. Briefing on the motions concluded September 9, 2011, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted and Kitt's motion is denied.

4.   A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.   "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen,

---

[2]The ALJ's December 4, 2008 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.  This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v.

Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Kitt has not engaged in substantial gainful activity since May 9, 2007 (R. 15);[3] (2) Kitt has three severe impairments: "cervical spine disorder, mild left carpal tunnel syndrome, and low back pain" (id.); (3) Kitt does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. 16); (4) Kitt retained the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) (id.) and; (5) considering Kitt's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform (R. 23). Ultimately, the ALJ concluded that Kitt was not under a disability as defined by the Act from May 9, 2007 through December 4, 2008, the date of the ALJ's decision. (R. 24.)

---

[3] Citations to the underlying administrative record are designated as "R."

10. Kitt raises three challenges to the ALJ's decision. First, Kitt argues that the ALJ erred when she did not properly evaluate the opinion of his treating physician, Dr. Michael Landi, M.D. Second, he asserts that the ALJ failed to properly evaluate his RFC. Third, Kitt argues that the ALJ improperly discredited his hearing testimony.

11. As described by Kitt, "at each and every visit from the alleged onset to the time of the hearing and after[, Dr. Landi] opined that the claimant was totally disabled." (Memorandum of Law in Support of Plaintiff's Motion ("Memo"), p. 14; Docket No. 11.) Kitt argues that these findings were improperly disregarded in favor of those of the consultive physicians and Mary Orrange, an occupation physical therapist.

12. Under the "treating physician's rule,"[4] the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

13. If the ALJ finds that the treating physician's opinion should not be given controlling weight, then, under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors : (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of opinion; (4) consistency; (5) specialization of treating physician; and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R.

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

§ 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

14. Kitt contends that the ALJ failed to "conduct th[is] requisite analysis." (Memo, p. 14.) But a finding by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner must determine that the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e); see also Green-Younger, 335 F.3d at 106 ("A treating physician's statement that the claimant is disabled cannot itself be determinative") (internal citation and quotation marks omitted). And, considered in context, Dr. Landi's opinion is not contrary to the other treating physicians. On October 14, 2008, just one month before the administrative hearing, Dr. Landi found that Kitt had good strength in all his extremities, he reported complete resolution of his preoperative neck and left-arm pain, his recent surgery was healing, and he has a normal gait and station. (R. 1256.) Although Dr. Landi found that Kitt suffered from a "total temporary disability," (R. 1257), it appears that this finding was in the context of a worker's compensation claim – meaning that Kitt could not perform his job as a laborer in which he is required to lift 80-pound bags. (R. 17.) The Social Security determination, on the other hand, turns on whether Kitt can perform *any* gainful activity. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f).

15. The findings of the other physicians were not to the contrary. For example, Dr. Sandra Boehlert, a consultive physician, examined Kitt nearly a year earlier but found that Kitt had limitations only in heavy exertional activities and heavy lifting. (R. 330.) Dr. John Devanny, who evaluated Kitt in August of 2007, opined that Kitt was capable of working provided that he avoided lifting, carrying, pushing, or pulling more than 50 pounds. (R. 302.)

16. ALJ Zahm considered this distinction between his job, which required very heavy lifting, and other jobs that exist in the national economy that a person having the claimant's qualifications could perform. She accepted the fact that he was totally disabled from performing his job, (R. 23), but concluded that he could perform less strenuous jobs. (Id.) In this sense, her decision accords with that of the physicians who are listed above, including Dr. Landi.

17. Moreover, even if Dr. Landi's opinion were considered under the broader Social Security standard, it would be controlling only if it was well supported, and was not inconsistent with, other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Here, Dr. Landi's summary of Kitt's August 14, 2008 visit reflects that Kitt was healing and doing well post-surgery. It specifies few impairments. His finding of total disability is thus unsupported by even his own summary of the evaluation. As laid out in more detail below, it is also inconsistent with other substantial evidence in the record. (See infra, ¶ 19.)

Further, his conclusion also contradicts Kitt's own testimony. At the administrative hearing, Kitt testified that he could stand for up to 30 minutes at a time, lift ten pounds in his left hand, and lift fifteen and carry twenty pounds in his right hand. (R. 1306-08.) Such abilities fit squarely within the bounds of sedentary work, 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185 (S.S.A. 1996), which the ALJ found Kitt could perform. As such, Kitt's motion on this ground is denied.[5]

---

[5]This Court notes that ALJ Zahm did not individually address each listed factor under the "treating physician's rule." But in accordance with the discussion above, this Court finds that remand on this matter is unnecessary because "where application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration." Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (quoting Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)) (alterations in original). Further, ALJ Zahm provided sufficient reasoning (with which this Court agrees) for disagreeing with Dr. Landi's ultimate conclusion. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (explaining the importance of providing reasons when the ALJ disagrees with the treating physician). Specifically, she

18.     Kitt next argues that ALJ Zahm failed to properly evaluate his RFC. An RFC assessment is made by the ALJ and it is meant to determine Kitt's maximum sustained ability to perform work activity. 20 C.F.R. §§ 404.1545, 416.945. In other words, it reflects a claimant's highest capacity to perform work-related tasks despite his impairment. Id. ALJ Zahm found that Kitt's RFC rendered him unable to perform "past, relevant work," but fully able to perform sedentary work. As defined in 20 C.F.R. § 404.1567(a):

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

19.     Although, as Kitt points out, Dr. Eugene Gosy found that Kitt could not lift or carry any amount of weight, Kitt's own testimony, outlined above, contradicts this finding. Further, considering the evidence as a whole, the collective evidence indicates that Kitt could perform a sedentary job. See Azeez v. Astrue, No. 09 CV-3976, 2012 WL 959401, at *5 (Mar. 21, 2012) ("The residual functional capacity is determined by considering all relevant evidence, consisting of physical abilities, symptoms including pain, and descriptions, including those provided by the claimant, of limitations which result from the symptoms."). Dr. Boehler found that Kitt had full grip strength and only mild limitations in heavy lifting. (R. 330.) Dr. Devanny found Kitt capable of working provided that he lifted, carried, pushed, or pull no more than fifty pounds. (R. 302.) Even Dr. Landi consistently observed that Kitt's gait and station were normal and that he demonstrated full muscle

---

found that the record evidence did not support Dr. Landi's finding and that the Functional Capacity Evaluation was especially instructive because it demonstrated "what the claimant was actually able to do." (R. 22, 23.)

strength throughout his arms and legs but for some weakness in the left hand. (R. 251, 347, 394, 1259.) Finally, Mary Orrange, an occupational therapist, noted that Kitt completed six full squats while lifting fifteen pounds (R. 405), that he demonstrated a good ability to sit, walk, and/or balance (R. 406), and that he exhibited no physical signs of pain during the testing. She concluded that during the course of an eight-hour workday, Kitt could sit, walk, and/or balance for up to eight hours each. (R. 573.) Accordingly, substantial evidence exists supporting ALJ Zahm's finding that Kitt has the RFC to perform a sedentary job.[6]

20. Lastly, Kitt argues that the ALJ failed to properly evaluate his credibility. The ALJ certainly discredited certain aspects of Kitt's testimony relating to his physical disabilities. However, in so doing, she carefully considered his alleged symptoms to the extent that they were reasonably compatible with the other evidence. See 20 C.F.R. § 404.1529(c)(4), 416.929(c)(4).

Kitt rests much of his argument on his position that the ALJ "discounted his credibility solely on the notion that since his past-work was heavy and the plaintiff testified that he would like to return to the same employer as he had worked for that company for 31 years." (Memo, p. 18.) But this Court finds that the ALJ did not discredit Kitt on this ground. His experience at his former job weighed, instead, in his favor. ALJ Zahm noted that Kitt's history of working with one employer for 31 years and the fact that he returned to work after his 2004 surgery "both speak to his credibility that he would be working if he could." (R. 22.) Kitt's credibility was undermined for other reasons – mainly his

---

[6] An individual with Kitt's vocational factors and RFC must be deemed not disabled. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Grid Rule 201.21. Thus, ALJ Zahm was not required to conduct a skills-transferability assessment.

performance during the Functional Capacity Evaluation ("FCE"), conducted by Orrange.[7]

21. Orrange noted four inconsistencies between Kitt's initial exam – where he claimed that he was very physically limited – and his actual functional limitations as borne out through subsequent testing. For example, Orrange notes that Kitt "demonstrated limited neck active range of motion during the muscloskeletal exam," but during the FCE, he "was observed to present with full neck, shoulder, and trunk active range of motion." (R. 569.) Along with two other inconsistencies, Orrange also indicates that he initially failed to "attain shoulder flexion to 120°," but that during the FCE, he "safely completes" such a lift six times with a 15-pound weight. (Id.) In sum, Kitt gave a "sub-maximal, inconsistent effort." (Id.) What is more, Orrange could not even complete her test because Kitt self-terminated it before it was complete. (Id.) Kitt provides no explanation for this in his motion papers.

Nor was Orrange the only examiner to notice that Kitt seemed to embellish his symptoms. Dr. Devanny also observed that Kitt exhibited "moderate-to-marked symptom magnification and pain behavior." (R. 301.)

In light of these findings and the evidence suggesting Kitt could perform a sedentary job, ALJ Zahm reasonably concluded that Kitt's allegations were not entirely credible. See Lynch v. Astrue, No. 09 CV-00623, 2011 WL 2516213, at * 7(W.D.N.Y. June 21, 2011) (claimant's testimony regarding his symptoms will only be credited to the extent that alleged limitations can reasonably be accepted as consistent with the objective medical evidence and other evidence) (quoting 20 CFR § 404.1529(c)(4)).

---

[7] Kitt argues that no weight can be assigned to Orrange's findings because she is not a medical doctor. But 20 CFR § 404.1513 provides that "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s)." Although Orrange is not an "acceptable medical source," this does not bar the ALJ from considering her opinion. In fact, "[a]n opinion from a "non-medical source" who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source." SSR 06-03P, 2006 WL 2329939, at *6 (S.S.A. 2006).

22. Accordingly, for the reasons stated above and having found that ALJ Zahm's finding was supported by substantial evidence, Kitt's motion for judgment on the pleadings is denied and the Commissioner's motion is granted.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:  March 26, 2012
        Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court